## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 60171-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JORY EDWARD DENMAN, | |
| Appellant. | |

CHE, J. — Jory Denman appeals his convictions for first degree criminal trespass and felony violation of a court order—domestic violence.

On the morning of Denman's trial, the State's witness—LH, victim of Denman's crimes—notified the State that she would not be appearing to testify. Until that time, LH had been in regular contact with the State and had requested and received her subpoena electronically. The parties began voir dire while an officer personally served LH with a subpoena requiring her appearance an hour later. She agreed to appear.

When LH did not appear, the trial court granted the State's motion for a material witness warrant over Denman's objection, instructing the State to produce LH that afternoon. That afternoon, the State had not yet found LH, and the State moved to extend its deadline to produce

her until the next morning. The trial court extended the deadline over Denman's objection. The next day, the State produced LH, LH testified at trial, and the jury convicted Denman.

Denman argues the trial court abused its discretion by issuing the material witness warrant and the government committed misconduct by mismanagement. We hold the trial court did not abuse its discretion by issuing the material witness warrant and the State did not commit misconduct in this case.

Accordingly, we affirm.

FACTS

The State charged Denman with one count of first degree vehicle prowl and one count of felony violation of a court order—domestic violence. The State listed LH, the victim of Denman's alleged crimes, as a witness.

At 8:38 AM on August 14, 2024, the parties convened for trial. The State notified the trial court that it had received an email from LH at 6:57 AM. The email read, "'I'm sorry. Everyone has worked so hard in this case, and I realize that I may be in trouble. I cannot come to court.'" 1 Rep. of Proc. (RP) at 6. The State further informed the court that it had sent Officer Justin Krebs to find LH and explain to her "the necessity of appearing for court in the case, in which I believe she has been subpoenaed." RP at 6. If LH failed to appear, the State indicated it would seek a material witness warrant, but it preferred not to force LH to be arrested.

The trial court noted the lack of a subpoena for LH in the court file. The State explained that Officer Krebs had a copy of the subpoena requiring LH's appearance at 10:30 AM, and that if

Officer Krebs found LH, he would personally serve her.[1]  The State had already tried calling and

emailing LH that morning without success.

Denman requested "proof of the Subpoena before any material witness warrant issues."

RP at 8.  The State believed it had served LH, but it was not sure because its employee who

handled the matter was out of the office.  The State informed the court that LH had requested the

subpoena be sent via email but its procedure also included sending it via mailed letter.  Denman

argued that service was improper as it must be done in person or by mail, not via email.

The trial court took a brief recess for the State to confirm whether the subpoena had been

properly served on LH.  Upon return, the State was unable to confirm personal service.  The

State represented that a victim's advocate had communicated with LH, and that LH had been

aware of the trial date for at least several days.  The State also confirmed that it had sent the

subpoena to LH, at her request, via email.  The State explained that LH knew the date of trial,

never previously expressed any objections to that date, and never recanted any statements or

allegations she had initially made to police, although she had expressed some apprehension about

testifying.

At that moment, the State received a message from Officer Krebs confirming that he had

found LH and personally served her with the subpoena at 9:30 AM.[2]  According to Officer Krebs,

---

[1] During several colloquies with the trial court, the State stated that the subpoena required LH to appear at 10:00 AM.  However, the subpoena required LH's appearance at 10:30 AM.

[2] The subpoena required LH to appear on August 14, 2024, at 10:30 AM.  It read, "Failure to appear may result in the issuance of a warrant for your arrest."  (Boldface and capitalization omitted.)  Clerk's Papers at 26.

LH confirmed that she would come to court. The State stressed that if LH failed to timely appear, it would request a material witness warrant.

Denman objected, stating, "it doesn't sound like [LH] was [properly] served [by the emailed subpoena]. It doesn't sound like she was given a Subpoena that would hold up here." RP at 15. Further, Denman suggested that the manner of personal service that morning presented an "aura, you know, around her that like, hey, you need to be here or else." RP at 16. The State responded that all subpoenas carry the implicit consequence of material witness warrants if the witness chooses not to appear.

The trial court stated, "I don't see anything in the rule that would indicate that service on the day of the trial is improper, in and of itself. . . . So, I guess we're ready to proceed at this juncture. And, [defense] Counsel, your objections are noted in the record." RP at 18. The court dealt with other trial related matters including voir dire.

During a break in jury selection, the State requested a material witness warrant. The State's reasons for requesting the material witness warrant included that LH had told Officer Krebs that morning that she was on her way to court, the subpoena required her to appear at 10:30 AM, and she was unreachable.[3]

Denman objected and argued the State should not have declared ready for trial without having first properly subpoenaed LH. Had the State subpoenaed LH before trial and filed the subpoena with the trial court, a material witness warrant would have been acceptable to Denman. "Defense would argue this appears to be mismanagement. . . . And as a result of that

---

[3] The State explained that the only response it had received from LH was when its advocate contacted her on "a [social media] account," and LH responded "Hello." RP at 73. Once the advocate began to speak, LH "ceased communications." RP at 73.

mismanagement, [the State doesn't] know where their witness is. And now they're requesting a material witness warrant, which will delay this trial who knows how long." RP at 74.

The State replied that based upon its earlier communications with LH, and Officer Krebs' conversation with LH that morning, LH clearly knew she was expected to appear. The State further responded that even though it had previously provided a subpoena to the sheriff's office with the expectation that it would be personally served, the sheriff's office was unable to confirm service of the initial subpoena. Further, the State argued that no rule required "a witness to be served a number of days prior to" the date they are required to appear. RP at 75. The trial court considered the issue while the parties continued with voir dire.

Later, returning to the material witness warrant issue, Officer Krebs arrived and the State filed the return of service. Denman objected again to the State's request for a material witness warrant, arguing that the State committed misconduct because the State's actions were leading to unnecessary delay and undue burden on the court system and the jurors.

The trial court granted the motion for a material witness warrant, ruling, "we've delayed the trial, but not significantly. Not any more than any other typical administrative morning. I mean, things happen in these, we don't get a jury called that quickly." RP at 97. Further noting that the parties needed to finish voir dire and conduct a CrR 3.5 hearing before beginning testimony, the trial court instructed the State, "[LH] needs to be here no later than 2:30 [PM]." RP at 97.

The trial court empaneled the jury, recessed for lunch, and reconvened at 2:00 PM to conduct the CrR 3.5 hearing and proceed with trial. Officer Krebs had been searching for LH since the issuance of the material witness warrant but remained unable to find her.

5

At that point, the State informed the trial court of messages it had received from LH several days earlier. According to the State, LH wrote, "I do not want any more charges o[n Denman]. . . . I don't want him to do something stupid. Also I keep thinking about when he gets out, I won't be safe." RP at 117-18. The State explained that the messages contained screenshots of alleged recent text message conversations between Denman and LH.[4] The State also told the trial court, "I have other emails expressing that [LH] is scared of [Denman]." RP at 118. The State informed the trial court that Denman had been released from custody two days before trial.

Based on that information, and because "we anticipate going towards tomorrow anyway," the State requested that the trial court extend the deadline to produce LH until the next morning. RP at 117. The State further argued that if it could not find LH by that time, it would present a forfeiture by wrongdoing argument in order to admit LH's statements—made at the time of the investigation and captured on Officer Krebs' body camera—in her absence.[5] Denman objected.

The State replied that LH's change in willingness to testify and demeanor was likely connected to the text messages as well as the fact that Denman had recently been released from custody. Additionally, the State argued that the trial was going to extend into the next day

---

[4] Other messages read into the record appeared to state, "I never cheated on you. And when you do realize that you, you're going to hate yourself for making me go away. I'm not giving two"— "about jail because I'm not going. I've got other things in mind, and it ain't around here." They continue, "I'm leaving forever someplace else. So enjoy your life without me, because you'll never see me again. So goodbye, [LH]." RP at 118.

[5] "The forfeiture by wrongdoing doctrine is an equitable exception to the Sixth Amendment's right to confrontation. Under the doctrine, defendants that procure the unavailability of a witness forfeit their right to confront the missing witness." *State v. Brownlee*, 18 Wn. App. 2d, 1, 10, 492 P.3d 866 (2021) (internal citations omitted).

regardless, so its preferred outcome would be to extend its deadline to produce LH until the next morning, as opposed to pursuing a forfeiture by wrongdoing argument.

The trial court granted the extension but expressed its concern that the messages sent by Denman to LH had not been presented earlier in the day. The trial court noted the extension was "subject to briefing by Counsel, if you want to address it in the morning." RP at 125. It also requested the parties brief the issue of forfeiture by wrongdoing in case the State failed to find LH. Because it extended the deadline, the trial court also delayed the CrR 3.5 hearing until the following morning and excused the jury early for the day.

The State produced LH the following morning. The court held the CrR 3.5 hearing. LH was the only witness to testify to the jury. The jury convicted Denman of felony violation of a court order—domestic violence. The jury also convicted Denman of the lesser offense of first degree criminal trespass instead of first degree vehicle prowl.

During sentencing, the parties briefly discussed several messages sent from LH.[6] The State presented the trial court with an email sent by LH to defense counsel, shortly after Denman's trial, in which LH stated, "I feel the prosecutors manipulated me and my statements to win this case." RP at 333. LH also suggested the State had promised her it would pursue whatever "deal" she was most comfortable with, that it would not file any additional charges against Denman, and that LH felt guilty that Denman was facing so much time in custody. The State denied having made any such promises to LH. The trial court sentenced Denman to a drug offender sentencing alternative that required 30 months confinement and 30 months community custody.

---

[6] Copies of the messages have not been presented to us in the record for this case.

Denman appeals.

ANALYSIS

I. MATERIAL WITNESS WARRANT

Denman argues the trial court abused its discretion by issuing the material witness warrant for LH. The State counters the trial court did not err because the State made an effort to secure LH's presence and LH's testimony was material. We disagree with Denman.

In criminal cases, either the State or the defendant may seek a material witness warrant. CrR 4.10(a). The party must show, "by affidavit or on the record in open court, that the testimony of the witness is material and that (1) The witness has refused to submit to a deposition ordered by the court pursuant to CrR 4.6; or (2) The witness has refused to obey a lawfully issued subpoena; or (3) It may become impracticable to secure the presence of the witness by subpoena." CrR 4.10(a).

We review a trial court's decision to issue a material witness warrant for manifest abuse of discretion. *City of Bellevue v. Vigil*, 66 Wn. App. 891, 895, 833 P.2d 445 (1992). "'If no other remedy is sufficient, a denial of the request may constitute an abuse of discretion.'" *Id.* (quoting 13 R. FERGUSON, WASH. PRAC., CRIMINAL PRACTICE & PROCEDURE § 3306, at 257 (1984)).

Here, the trial court did not abuse its discretion. The parties do not contest whether LH's testimony was material, that the subpoena Officer Krebs served the morning of trial satisfied personal service requirements, or that LH failed to appear subject to the subpoena personally served upon her. Additionally, at the time of personal service, LH assured Officer Krebs that she would appear. The State submitted the return of process in open court. Consequently, LH's

refusal to obey a lawfully issued subpoena authorized the trial court to issue a material witness warrant. CrR 4.10(a)(2).

Moreover, the State attempted to secure LH's presence in multiple other ways, all without success. *See* CrR 4.10(a)(3). Prior to trial, the State communicated with LH multiple times and emailed her a copy of the subpoena. Further, the State called and emailed LH on the day of trial, to no avail. The State personally served the subpoena on LH, and LH ultimately refused to comply with its requirements. That fact, coupled with the State's other unsuccessful attempts to secure LH's presence, showed the impracticality of securing LH's presence through the mere service of a lawful subpoena and provided a reasonable basis for the trial court to issue a material witness warrant.

Despite this, Denman argues that long-standing case law makes it an abuse of discretion for a trial court "to continue the trial and issue a material witness warrant when the State failed to show due diligence." Reply Br. of Appellant at 1. Denman relies on case law stating that due diligence requires issuance of a subpoena prior to a party seeking a material witness warrant and continuance.

Denman's argument fails because the State properly served LH with a subpoena before the trial court issued a material witness warrant. Denman cites to no rule or requirement that a subpoena must be served earlier than the day of a required appearance to be lawful. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none").

This argument also fails because the State did not seek—and the trial court did not grant—a continuance. Instead, the court recessed in the afternoon after empaneling the jury and before conducting the CrR 3.5 hearing. The cases Denman relies upon pertain to continuances, not recesses, and are unpersuasive.

Moreover, even if the trial court granted an overnight continuance, the State exercised due diligence by serving the subpoena prior to seeking a material witness warrant. *See State v. Wake*, 56 Wn. App. 472, 476, 783 P.2d 1131 (1989) ("issuance of a subpoena is a critical factor in granting a continuance"), *State v. Smith*, 56 Wn.2d 368, 370, 353 P.2d 155 (1960) ("failure to cause a subpoena to issue clearly constitutes such a lack of diligence as to justify the denial of a motion for a continuance.").[7]

Denman also appears to argue the trial court abused its discretion because issuing the material witness warrant created "an inherently coercive atmosphere" for LH and secured her testimony under "questionable, last-minute, and arguably coercive circumstances." Br. of Appellant at 21, 22. Denman's argument is unavailing. This argument ignores that all material witness warrants, and for that matter, subpoenas generally, are inherently coercive. The trial court may decide to not issue a material witness warrant in some circumstances because doing so is a "drastic measure." *Bellevue*, 66 Wn. App. at 896. Here, however, the State met all the criteria for the issuance of the material witness warrant. As a result, any "inherently coercive

---

[7] Denman does not assign error to any trial court decision continuing trial. Thus, to the extent Denman argues the trial court abused its discretion by continuing trial, we decline to consider his argument. *Dalton M, LLC v. N. Cascade Tr. Srvcs., Inc.*, 2 Wn.3d 36, 50, 534 P.3d 339 (2023); RAP 10.3(g).

atmosphere" created by the State's arrest of LH did not invalidate the trial court's authority to issue the warrant.

For all the reasons above, we hold that the trial court did not abuse its discretion in issuing the material witness warrant.

## II. MISCONDUCT

Next, Denman appears to argue the State committed misconduct through mismanagement. First, he argues the State's failure to subpoena the only trial witness amounted to mismanagement. And second, he argues the State misrepresented LH's state of mind to the trial court. We conclude these arguments are unpersuasive.

CrR 8.3(b) governs the dismissal of a criminal case based upon arbitrary action or governmental misconduct. "The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." Former CrR 8.3(b) (2008). To prevail on such a claim, the defendant bears the burden to show misconduct as well as "prejudice affecting their right to a fair trial."[8] *State v. Bragg*, 28 Wn. App. 2d 497, 518, 536 P.3d 1176 (2023); former CrR 8.3(b) (2008). The alleged misconduct need not be evil or dishonest in nature; "'simple mismanagement is sufficient.'" *Bragg*, 28 Wn. App. 2d at 518 (emphasis omitted) (quoting *State v. Michielli*, 132 Wn.2d 229, 239, 937 P.2d 587 (1997)).

---

[8] Although the "right to a fair trial" language was removed from the current version of CrR 8.3(b), it was present in the version of the rule in effect at the time of Denman's trial and at the time the court decided *Bragg*, 28 Wn. App. 2d 497.

In this case, neither instance of alleged misconduct occurred. First, the State personally served LH with a subpoena before her testimony. Thus, the State satisfied the requirements of service, and the trial court, acting within its discretion, properly issued a material witness warrant.

Second, Denman argues the State misrepresented LH's reason for failing to appear. Denman argues it was the State's actions—not his—that dissuaded LH from appearing. Denman relies on the letters written by LH, after trial, in which she accused the State of manipulating her and her statements as well as breaking a promise not to add additional charges against Denman. He claims that the letters "paint a picture of a witness who felt manipulated and pressured by the prosecution." Br. of Appellant at 25. Denman's argument is unpersuasive.

The message sent by LH to the State, and read by the State to the trial court, explaining that LH was no longer going to testify, was written by LH herself. And so were the messages LH sent to the State expressing her worry that when Denman was released, LH would not be safe. Thus, the State could not have misrepresented LH's state of mind because it read LH's own words directly to the court. And LH's later expressions of dissatisfaction with the outcome of the trial, or the State's trial strategy, do not reveal that the State made any misrepresentation.

Because the State did not fail to serve the subpoena, no mismanagement occurred. Because the State provided LH's own words to the trial court, no misrepresentation occurred. Because no mismanagement or misrepresentation occurred, no misconduct occurred. Accordingly, Denman's argument fails.

No. 60171-1-II

CONCLUSION

We hold the trial court did not abuse its discretion by issuing the material witness warrant and the State did not commit misconduct in this case.

Accordingly, we affirm.

A majority of the panel, having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Che, J_

Che, J.

We concur:

Veljacic C.J.

Price, J.

13